IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Civil Case No.: 14-CV-80627-WPD

LINDA DYE, as an individual and on behalf of
all others similarly situated,

    *Plaintiff,*

*vs.*

BODACIOUS FOOD COMPANY, a Georgia
corporation,

    *Defendant.*

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff, LINDA DYE, ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, files her Response in Opposition to Defendant's, Bodacious Food Company ("Defendant") Motion to Dismiss [DE 7], and states:

**I.   Introduction**

Defendant unlawfully, negligently, unfairly, misleadingly, and deceptively represents to the public that at least three varieties of its Geraldine Cookies food products are "All Natural." Those three varieties are:  1) Geraldine's Italian Wedding Cake; 2) Geraldine's Pecan Cini-Minis Cookies; and 3) Key Lime Cookies (collectively, the "Products").  However, these Products contain unnatural, synthetic, artificial, and/or genetically modified ingredients, including sugar, canola oil, dextrose, corn starch, and citric acid (collectively, the "Substances").  Consequently, Defendant has misrepresented the nature of its food products because food that contains unnatural, artificial, synthetic, and/or genetically modified ingredients is not "All Natural."

Plaintiff brings this lawsuit against Defendant, seeking, among other things, damages,

restitution, a declaratory judgment, and an order from this Court compelling Defendant to remove the erroneous "All Natural" label from the subject food Products. To that end, Plaintiff asserts claims against Defendant for: (1) false, deceptive, unfair, and unlawful business practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. §§ 501.201, *et seq.*; (2) negligent misrepresentation; (3) breach of express warranty; (4) violation of the Magnusson-moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*; and, in the alternative, (5) unjust enrichment.

Plaintiff properly pleaded each of her claims against Defendant, and this Court has jurisdiction to adjudicate this lawsuit. Defendant's Motion to Dismiss, asserts the following flawed arguments:

    a) The Primary Jurisdiction Doctrine requires dismissal

    b) Plaintiff does not meet the requisite jurisdictional amount in controversy

    c) Plaintiff lacks standing to seek injunctive relief

    d) The non-GMO products were disclosed on the back of the Products

    e) Plaintiff has not provided a definition for the term "Natural"

    f) Plaintiff did not plead with particularity

    g) "All Natural" was "mere labeling" and did not constitute a warranty

    h) "All Natural" is not a "product description" that is not actionable under the MMWA

As discussed in detail below, these arguments are legally deficient and cannot form the basis for dismissal of Plaintiff's Class Action Complaint [D.E. 1] ("Complaint" or "Compl.") and, therefore, Defendant's Motion to Dismiss [D.E. 9] ("Motion to Dismiss" or "MTD") should be denied in its entirety.

**II.     Factual Background**

This crux of this case is that Defendant has advertised and sold the Products claiming that the Products are "All Natural" on their front packaging and labeling, despite the presence of unnatural, artificial, synthetic, and/or genetically modified Substances in the Products. Compl. ¶ 1.

The Products' "All Natural" claim is likely to mislead reasonable consumer because the Substances in the Products are not natural ingredients. *Id.* at ¶¶ 5, 16, 24, 28, 79, 84, 97, 125. Defendant's "All Natural" representation on the Products' packaging is false, deceiving, and likely to mislead reasonable consumers. *Id.* at ¶ 5.

Defendant manufacturers, advertises, and sells the Products throughout Florida to the general public, *see Id.* at ¶¶ 3, 17, 23, 25. Despite the fact that the Products contain some or all of the Substances—none of which are natural—Defendant labels each variety of the Products as being "*All* Natural." *See id.* at ¶¶ 1–5, 7, 23--27, 30, 33, 39, 46, 48--51, 54 (emphasis added). This label is deceptive, misleading, and likely to deceive reasonable consumers. *See id* at ¶¶ 5, 24, 125. Defendant's mislabeling is, thus, unlawful, unfair, misleading, and/or constitutes deceptive advertising under Florida law. *See Id.* at ¶¶ 1, 6, 17, 124.

Defendant charges its customers a price premium for its (erroneously labeled) "All Natural" Products. *Id.* at ¶ 27. Plaintiff and the Class, reasonably believing that the Products were actually "All Natural," paid Defendant its price premium, over and above food products not described as "All Natural." *Id.* at ¶¶ 44, 51. Plaintiff and the Class were among Defendant's intended recipients of Defendant's false representations, because Defendant, through its deceptive "All Natural" packaging, intended to induce Plaintiff and the Class to purchase the premium-priced Products. *Id.* at ¶ 36.

Plaintiff has alleged the facts surrounding her purchase of the Products in the Complaint in a sufficient manner to put Defendant on notice of her claims, by specifying that Plaintiff has purchased the Products at a Publix Supermarket, located in Palm Beach Gardens, Florida, during the Class Period. *Id.* at ¶ 45. Plaintiff perceived, read, and relied on the Products' "All Natural" labeling, which was material to her purchasing decision, causing her to reasonably believe that the Products were actually "All Natural." *Id.* at ¶ 46.

It was not until after the Products were purchased that Plaintiff discovered they were not "All Natural," because all of the Products contain unnatural, synthetic, artificial, and/or genetically modified ingredients. *Id.* at ¶ 48. Plaintiff and the Class would not have purchased the Products if they had known that the Products contained unnatural, synthetic, artificial, and/or genetically modified ingredients. *Id.* at ¶ 52. Consequently, Plaintiff and the Class suffered economic damages by purchasing Defendant's misbranded Products, because the Products are valueless, worth less than what Plaintiff and the Class paid for, and/or are not what Plaintiff and the Class reasonably intended to purchase. *Id.* at ¶¶ 54, 55.

As a result, Plaintiff filed the Complaint [D.E. 1] on or about May 10, 2014, alleging causes of action for: (i) violations under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*; (ii) negligent misrepresentation; (iii) breach of express warranty; (vi) violation under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("MMWA"); (v) and unjust enrichment. Plaintiff seeks relief in the form of declaratory relief, an injunction enjoining Defendant from continuing to mislead the public, restitution, and other damages. *Id*. at ¶7.

### III.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and its allegations of material fact are taken as true." *Romano v. Motorola, Inc.*, 2007 US Dist. LEXIS 86472, *2 (S.D. Fla. 2007) (citing *McReynolds v. Alabama Dept. of Youth Services,* 204 Fed. Appx. 819, 821 (11th Cir. 2006)).

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Thus, "[a] motion to dismiss should be granted only if 'it appears beyond doubt that the plaintiffs can prove no set of facts in support of their allegations which would entitle them to relief.'" *Id.* (quoting *Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1307 (11th Cir. 1998), cert. den., 525 U.S. 1139 (1999)). "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Del Monte Fresh Produce Co.* v. *Dole Food Co., Inc.,* 136 F.Supp.2d 1271, 1283 (S.D. Fla. 2001).

Applying these standards, it is clear that Defendant's Motion to Dismiss should be denied in its entirety.

## IV. Defendant's Motion to Dismiss Should Be Denied in Its Entirety

A. The Primary Jurisdiction Doctrine Does Not Apply to This Case

The primary jurisdiction doctrine "seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime." *Pharmaceutical Research and Mfrs. of America*

*v. Walsh*, 538 U.S. 644, 674, (2003) (Breyer, J., concurring); *Syntek Semiconductor Co. v. Microchip Technology Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) ("[I]t is a prudential doctrine under which courts *may*, under appropriate circumstances, determine that the initial decision making responsibility should be performed by the relevant agency rather than the courts.").[1] The primary jurisdiction doctrine does not apply here, especially considering that "Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by Federal laws and regulations." Compl. ¶ 8.

The Eleventh Circuit has explained that:

> The primary jurisdiction doctrine is ... concerned with protecting the administrative process from judicial interference." *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000). Primary jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v.Cooper*, 507 U.S. 258, 268, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993). "'[T]he main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation.'" *Boyes*, 199 F.3d at 1265 (quoting *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1310 (2nd Cir.1990)); *see also United States v.Western Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

*Sierra Club v. Van Antwerp*, 362 F. A'ppx 100, 104 (11th Cir. 2010).

The primary jurisdiction doctrine is not needed in this case, a fact that numerous courts

---

1. "[P]rimary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency. It is not . . . a doctrine that requires that all claims within an agency's purview to be decided by the agency. Nor is it intended to secure expert advice for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Id.*

have recognized on this very issue. As explained in *Lockwood v. Conagra Foods, Inc.*, "various parties have repeatedly asked the FDA to adopt formal rulemaking to define the word natural and the FDA has declined to do so because it is not a priority and the FDA has limited resources.

Moreover, this is not a technical area in which the FDA has greater technical expertise than the courts—every day courts decide whether conduct is misleading." 597 F.Supp.2d 1028, 1035 (N.D. Cal. 2009); *Morgan v. Wallaby Yogurt Co.*, No. 13-cv-00296-WHO-, 2013 WL 5514563, *4 (N.D. Cal. Oct. 4, 2013) (noting that there is "no reason why determining whether a label is misleading is outside the ability of the Court. Such questions are frequently determined by the courts"); *Jones v. ConAgra Foods, Inc.*, 2012 US Dist. LEXIS 178352, *6 (N.D. Cal., Dec. 17, 2012) ("[C]ourts need not refer ["natural"] claims to the FDA pursuant to the primary jurisdiction doctrine"); *see also Wright v. General Mills, Inc.*, 2009 U.S. Dist. LEXIS 90576, *9 (S.D. Cal., Sept. 30, 2009) ("[b]ased on the FDA's consistent determination that the term 'natural' does not need specific definition, state law claims based upon the use of the term 'natural' [do] not [present] an issue of first impression, do not require technical expertise within the special competence of the FDA, and [do] not [raise] a particularly complicated issue outside the ability of the Court to consider and decide"); *Reilly v. Amy's Kitchen, Inc.*, No. 13-21525-cv-COHN/SELZER (S.D. Fla. Dec. 9, 2013) (rejecting primary jurisdiction argument where issue was not a matter of first impression); *Krzykwa v. Campbell Soup Co.*, 946 F. Supp.2d 1370 (S.D. Fla. 2013) (where this Court rejected defendant's primary jurisdiction argument over a "100% Natural" claim).

Accordingly, Plaintiff's claims in the present case fall well within the authority of this Court. Plaintiff's state law claims based upon the misleading use of the term "All Natural" do not require the expertise of the FDA or any other federal agency, and as such, are not precluded

by the primary jurisdiction doctrine. The issue of whether attaching the "All Natural" label to a product with unnatural, artificial, synthetic, and/or genetically modified ingredients is misleading to the reasonable consumer is a matter well-within the province of this Court, especially because all of Plaintiff's claims are based on the same, uniform "All Natural" misrepresentation. Therefore, Defendant's Motion to Dismiss should be denied because the primary jurisdiction doctrine does not apply.

    B. <u>This Court Has Jurisdiction over Plaintiff's Claims</u>

Defendant also seeks dismissal of Plaintiff's Complaint for want of subject-matter jurisdiction, arguing only that Plaintiff's claims cannot meet the Class Action Fairness Act's $5,000,000 amount in controversy. MTD pp. 5—6. In support of this position, Defendant relies on certain unverified financial data it provided confidentially to Plaintiff and the Court. MTD p. 6 n.2. Defendant's argument fails for two independent reasons. First, Plaintiff's Fourth Count, violation of the Moss-Magnuson Warranty Act, 15 U.S.C. § 2301 *et seq.* is a *federal statute* and, thus, this case presents a federal question. *See* 28 U.S.C. §§ 1331, 1367.

Nevertheless, at this stage, this Court should not decline to exercise jurisdiction over this matter, pursuant to CAFA, based solely on the unsworn financial documents Defendant provided to Plaintiff pre-suit, which, *ipso facto*, were not prepared and provided according to the *Federal Rules of Civil Procedure*. In other words, Defendant is asking this Court—without providing citation to a single applicable court decision—to declare that, as a matter of law, this Court does not have jurisdiction over this case based solely on self-serving financial documents that Defendant prepared, unless Plaintiff proves, without the benefit of discovery, otherwise. MTD p. 6.

Given the success of Defendant's Products during the Class Period, Plaintiff, in good

faith and on information and belief, has properly alleged that the amount in controversy—and not just the amount Defendant wants to be in controversy—exceeds the $5,000,000 jurisdictional limit required under CAFA. *See* Compl. at ¶ 10. Moreover, the scope of the size of the Class, sales figures, and the applicable damages to be awarded to the Class are a matter for discovery. The scope of the Class and resultant damages may increase beyond those provided by Defendant pre-suit as discovery proceeds. Defendant erroneously asserts that Plaintiff must *prove* her case in the Complaint, she must simply *plead* her case. Accordingly, Defendant's Motion to Dismiss should be denied because the amount in controversy has been properly alleged pursuant to CAFA.

C. <u>Plaintiff Has Standing To Seek Injunctive Relief Against Defendant's Unlawful, Fraudulent, Negligent, Misleading and Deceptive "All Natural" Product Labeling</u>

Defendant next argues that because Plaintiff, by bringing this lawsuit, has evidenced that she will not be fooled again so Plaintiff lacks standing to seek injunctive relief against Defendant. MTD pp. 7—8. This position has been rejected by numerous courts, including within the State of Florida, and should be rejected by this Court as well.

Plaintiff purchased the Products believing that they were "All Natural." Compl. at ¶ 46. The "All Natural" label on the Products' packaging was material to Plaintiff and the Class, causing them to actually pay more money for the Products than they would have for similar food products not represented as "All Natural." *Id.* at ¶ 34. Subsequent to purchasing the Products, however, Plaintiff learned that the Products are made with unnatural, synthetic, artificial and/or genetically modified ingredients, and thus, the Products are not "All Natural," due to the presence of these ingredients. *Id.* at ¶ 50.

Understandably, Plaintiff does not want to suffer damages again by Defendant's false and deceptive advertising of the Products. Plaintiff would not have purchased the Products had she

known they were made with unnatural, synthetic, artificial, and/or genetically modified ingredients. *Id.* at ¶ 51, 53. Moreover, now that Plaintiff knows the truth regarding the Products' ingredients—and Defendant's concomitant deception—Plaintiff will not purchase the Products again, at least not while they are advertised as being "All Natural" while still containing the unnatural Substances. *See id.*

In light of Defendant's deceptive practices, Plaintiff brought this class action, seeking, among other things, injunctive relief in the form of an Order compelling Defendant to cease its deceptive "All Natural" advertising on the labeling of the Products. But, Defendant, in its Motion to Dismiss, argues that because Plaintiff is aware of Defendant's deceptive practice, she will not be fooled into purchasing the Products again. MTD p. 8. This argument is not only wholly inconsistent with the principles underlying FDUPTA, but has also been criticized and rejected by courts from around the country, as well as within this State.

For example, in *Henderson v. Gruma Corp.*, No. CV10-04173 AHM (AJWx), 2011 WL 1362188, * 7 (C.D. Cal. April 11, 2011), the defendant claimed that the plaintiffs there did not have standing to seek injunctive relief in connection with the defendant's false "All Natural" claim on one of its products. The court stated that if Article III standing were construed "as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California's consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing." *Id*.

Likewise, in *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. Nov. 27, 2012), the court noted that just because the plaintiffs learned of the defendant's false advertising does not make the defendant's statements any more truthful. *Id.* at 533. The court

continued, "[s]hould plaintiffs encounter the denomination 'All Natural' on an Arizona beverage at the grocery store today, they could not rely on that representation with any confidence" and, moreover, if the court were "to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic standard." *Id.*

Similarly, in *Davis v. Powertel, Inc.* 776 So. 2d 971 (Fla. 1st DCA 2000), the plaintiffs brought a claim for declaratory and injunctive relief under FDUTPA. There, like here, the defendant argued that injunctive relief was not available because there was no continuing harm to the named plaintiffs. *Id.* at 975. The court, however, rejected that argument, noting that "this argument appears to be at odds with the applicable remedy provision in the Deceptive and Unfair Trade Practices Act, as well as the general purpose of the Act." *Id.* The court explained that the text of FDUPTA "is clear on its face" and "[n]othing in the statute requires proof that the declaratory or injunctive relief would benefit the consumer filing the suit." *Id.* As the court held, FDUTPA "merely requires an allegation that the consumer is in a position to complain (that he or she is aggrieved by the alleged violation) and that the violation has occurred, is now occurring, or is likely to occur in the future." *Id*. "This reading of section 501.211(1) is consistent with the overall purpose of the Deceptive and Unfair Trade Practices Act. The Act is designed to protect not only the rights of litigants, but also the rights of the consuming public at large." *Id*.

Here, Plaintiff purchased the Products in reliance on Defendant's false statement that the Products are "All Natural." *Id*. at ¶¶ 37, 97, 98. Plaintiff *now* knows, through no help from Defendant, that the Products are not what they say they are—"All Natural"—because the Products are made with unnatural, synthetic, artificial, and/or genetically modified ingredients. *Id.* at ¶ 50. Defendant's argument that Plaintiff's arming herself with the truth somehow divests this Court of

the power to enjoin Defendant from deceiving others should be rejected, and Defendant should not be allowed to circumvent the Legislature by pointing to a lawsuit for false advertising as proof that Plaintiff cannot suffer an injury again.

Therefore, Plaintiff can, and does have the right to, seek injunctive relief against Defendant in this lawsuit.

> D. Defendant's Deceptive "All Natural" Is Not Sanitized by the Disclosure of the Unnatural, Artificial, and/or Synthetic Ingredients on the Products' Back Label

Defendant, as it must, does not contend that the Substances are "All Natural." Rather, Defendant asserts that Plaintiff and the putative Class should have known that "All Natural" really did not mean *all natural*, because Plaintiff and the putative Class should have seen the ingredients listed on the rear packaging of the Products identifying them by name, and known they were not natural ingredients. However, Plaintiff and the putative Class are not chemists, and do not have the ability to test the ingredients in the sealed Products before purchase. Moreover, it is certainly not common knowledge that the Substances are artificial and/or synthetic. Plaintiff and the putative Class should not be expected to know that such substances are, in fact, not "All Natural," especially considering that Defendant did not identify each of the Substances as being artificial and/or synthetic on the back of the Products, or anywhere else on the Products for that matter.

Indeed, the "All Natural" label was prominently placed on the front packaging of the Products, *see* Compl. at ¶¶ 4, 24, but the Substances listed on the back of the Products were not identified as anything other than "All Natural." Accordingly, Defendant did not shield itself from liability in this matter by identifying artificial and/or synthetic chemicals on the rear side of the Products' packaging by name. *See Williams v. Gerber Products Co.,* 552 F.3d 934 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in

small print on the side of the box"); *see also Feiner v. Innovation Ventures, LLC*, Case No.: 12-cv-62495 (S.D. Fla. May 29, 2013) (denying defendant's motion to dismiss where defendant argued that its 5 Hour Energy product's slogan that "no crash later" was clarified on the rear label of the product to actually just mean "no sugar crash" because the front label representation effectively deceived the reasonable consumer for purposes of a motion to dismiss). However, in contrast to *Feiner*, Defendant here did not even identify the Substances as artificial and/or synthetic *anywhere* on the Products' packaging. Accordingly, this Court should reject Defendant's ineffective implausibility argument.

E. <u>Plaintiff Has Properly Articulated a Definition of the Term "Natural"</u>

Plaintiff has alleged in the Complaint that Products claiming to be "All Natural" means the food products should not contain any "unnatural,[2] synthetic,[3] and/or artificial[4] ingredients." Compl. ¶ 5. This, according to Defendant is not enough, relying entirely on distinguishable California cases. MTD p. 10.

Courts faced with similar "all natural" food label claims have refused to dismiss such claims involving similar ingredients.[5] Resisting the majority of case law, Defendant relies on

---

2. Unnatural means "not being in accordance with nature or consistent with a normal course of events." Merriam Webster, available at *http://www.merriam-webster.com/dictionary/unnatural* (last visited April 6, 2014).

3. Synthetic means "of, relating to, or produced by chemical or biochemical synthesis; *especially:* produced artificially." Merriam Webster, available at *http://www.merriam-webster.com/dictionary/synthetic* (last visited April 6, 2014).

4. Artificial means "humanly contrived often on a natural model." Merriam Webster, available at *http://www.merriam-webster.com/dictionary/artificial* (last visited April 6, 2014).

5. *Williams v. Gerber Products Co.,* 552 F.3d 934 (9th Cir. 2008) (reversing dismissal of breach of warranty and unfair competition claims challenging "all natural" toddler snacks containing corn syrup and sugar); *Holk v. Snapple Beverage Corp.,* 575 F.3d 329, 339 (3d Cir.

*Pelayo v. Nestle USA, Inc.*, 2013 WL 5764644 (C.D. Cal. Oct. 25, 2013), *Astiana v. Kashi Co.,* 291 F.R.D. 493 (S.D. Cal. 2013), and *Balser v. Hain Celestial Group, Inc.*, No. CV-13-05604-R, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2018).  But as another California case has noted, *Pelayo* is "at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit."  *Jou v. Kimberly-Clark Corp.,* 2013 WL 6491158, at *8 (N.D. Cal. Dec. 10, 2013).

     Likewise, the Defendants' reliance on *Astiana* is misplaced because that case does not hold that "all natural" claims are not actionable; rather, *Astiana* stands for the proposition that after discovery had occurred, and the parties' presented evidence *at the class certification phase*, the plaintiffs had not shown that a sufficient portion of class members would have been misled. *See Astiana*, 291 F.R.D. at 508.  *See also Jou*, 2013 WL 6491158, at *6 n.2 (N.D. Cal. Dec. 10, 2013) ("[t]o the extent Defendant cites *Astiana* for the proposition that even claims based on the term "all natural" necessarily fail on a Rule 12(b)(6) motion, that argument is rejected since *Astiana* was a class certification motion based on evidence produced in that case beyond the pleadings. Nevertheless, several courts have already consistently found the term "all natural" to be potentially deceptive when used in products that contain non-natural ingredients").

---

2009) (reversing dismissal of "all natural" iced tea containing high fructose corn syrup); *Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010) (denying motion to dismiss similar claims of "all natural" beverages containing high fructose corn syrup); *In re Conagra Foods Inc.,* 908 F.Supp.2d 1090 (C.D. Cal. 2012) (denying in part motion to dismiss similar claims of "100% all natural" cooking oil containing genetically modified organisms); *Lockwood v. Conagra Foods, Inc.,* 597 F. Supp. 2d 1028 (N.D. Cal. 2009) (denying motion to dismiss similar claims regarding "all natural" pasta sauce containing high fructose corn syrup); *Astiana v. Ben & Jerry's Homemade, Inc.,* C 10-4387 PJH, 2011 WL 2111796 at *3-4 (N.D. Cal. May 26, 2011) (denying motion to dismiss similar claims regarding "all natural" ice cream containing alkalized cocoa); *Henderson v. Gruma Corp.,* CV 10-04173 AHM AJWX, 2011 WL 1362188 at *11 (C.D. Cal. Apr. 11, 2011) (denying motion to dismiss similar claims regarding "all natural" bean dip containing transfats).

Finally, Defendant's reliance on *Balser v. Hain Celestial Group, Inc.*, No. CV-13-05604-R, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2018) is similarly misplaced. First, the *Balser* Plaintiffs "did not allege[] what they believed the 'natural' representation to have meant. . . ." *Id.* at *2. Here, Plaintiff did allege what "natural" meant. Compl. ¶ 5. Regardless, *Balser* involved shampoo and cosmetics and the plaintiffs' contention that "natural" meant "existing in or produced by nature; not artificial" was "implausible *as applied to the products at issue*." *Id.* (emphasis added). Applying the *Balsar* Plaintiff's *own definition*, the court there concluded that "shampoos and lotions do not exist in nature, there are no shampoo trees, cosmetics are manufactured." *Id.*

*Balsar*, *Pelayo*, and *Atriana* are all inapposite. Accordingly, Defendants' position that Plaintiff has failed to allege a definition of "All Natural," such that Plaintiff cannot state a claim is without merit and should be rejected.

F. <u>Plaintiff's Allegations Are Adequately Pled</u>

Plaintiff's Complaint is based on Defendant's false, unfair, deceptive, and misleading labeling and advertising of its Products, not outright fraud. Contrary to the improper position taken by Defendant, pleading with specificity is not required for Plaintiff's FDUTPA claim.[6]

---

6.  Because Plaintiff has not alleged outright fraud, "the heightened pleading standard of *Rule 9(b)* does not apply to [Plaintiff's] FDUTPA claim." *Hill v. The Hoover Co.*, No.: 1:06-cv-00096-SPM-GRJ, 2012 U.S. Dist. LEXIS 142212, at *8-9, (N.D. Fla. Oct. 1, 2012); *see also Romano v. Motorola, Inc.,* No. 07-civ-60517-COOKE-BROWN, 2007 U.S. Dist. LEXIS 86472, at * 3-4 (S.D. Fla. Nov. 26, 2007); *Tobak v. GNC Holdings, Inc*., 2013 U.S. LEXIS 131135, *4 (S.D. Fla. Oct. 10, 2013) (citing *Galstaldi v. Sunvest Cmties. USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009)) ("[T]he [pleading] requirements of Rule 9(b) do not apply to claims under the FDUTPA."). The Plaintiff's claims are based on unfair or unlawful conduct, thus, the Plaintiff is only required to "plead [her] claim in accordance with the requirements of *Rule 8(a)*." *Hill*, 2012 U.S. Dist. LEXIS 142212, at *8. Plaintiff's claims are based on unfair or unlawful conduct, thus, the Plaintiff is only required to "plead [her] claim in accordance with the requirements of *Rule 8(a)*." *Hill*, 2012 U.S. Dist. LEXIS 142212, at *8.
  "Furthermore, 'FDUTPA was enacted to provide remedies for conduct *outside the reach* of traditional common law torts such as *fraud*.'" *Romano*, 2007 U.S. Dist. LEXIS 86472, at * 4

Nonetheless, Plaintiff's pleading satisfies the Rule 9(b) standard.

Nonetheless, Plaintiff's pleading satisfies the Rule 9(b) standard. Rule 9(b) requires Plaintiff to plead the who, what, when, where, and how of Defendant's misconduct. *Speier-Roche v. Volkswagen Group of Am., Inc.*, 2014 U.S. Dist. LEXIS 59991, * 19 (S.D. Fla. April 30, 2014). Accordingly, Plaintiff has alleged the "what" by alleging that the Products' "All Natural" labeling is misleading and deceptive, and the "how" is that several of the ingredients contained within the Products are unnatural, synthetic, artificial and/or genetically modified. Compl. at ¶¶ 1, 48. Plaintiff alleged the "who" by alleging that Defendant was the party making the misrepresentation. *Id.* at ¶¶ 2, 3, 23, 25, 33; *see also In re: Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 123824, *73 (E.D. NY Aug. 29, 2013) ("Plaintiffs allege that defendants PepsiCo. and Frito-Lay (the 'who') falsely stated that the products are 'All Natural,' but in fact, are not, because they contain GMOs"). Plaintiff alleged the "when" element when she alleged that she purchased the Products claiming to be "All Natural" during the class period. Compl. ¶ 45. Finally, Plaintiff alleged the "where" by indicating that the erroneous "All Natural" label was uniformly placed on <u>all</u> of the Products in a substantially similar manner. *Id.* at ¶¶ 4, 24, 60.

---

(citing *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d. 1288, 1310 (S.D. Fla. 2005) (emphasis added). "Under the statute, a 'plaintiff need not prove the elements of fraud to sustain an action . . . because the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.'" *Romano*, 2007 U.S. Dist. LEXIS 86472, at * 3-4 (citing *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2001). "Federal decisions provide that 'a deceptive practice is one that is likely to mislead consumers." *Moss v. Walgreen Co*., 765 F. Supp. 2d 1363, 1367 (S.D. Fla. 2011) (internal citations omitted); *State, Office of Atty. Gen., Dept. of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue"); *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d DCA 2000) ("It is sufficient if . . . a reasonable person would have relied on the representations").

Thus, Plaintiff has sufficiently alleged the facts required under Rule 9(b)'s heightened standard if found applicable by this Court.

G. <u>Plaintiff Has Stated a Valid Claim for Breach of Express Warranty</u>

Defendant next contends that Plaintiff's Breach of Express Warranty count must be dismissed because Defendant did not make any promises to Plaintiff that formed the basis of a warranty. MTD pp. 12—13. None of Defendant's cited cases that involve all natural claims, or even food for that matter, were within the State of Florida and, therefore, are inapposite. Plaintiff's only Florida case pertained to a Mako 282 vessel product defect, not a food product case. *See* MTD p. 13. In that case, the plaintiff pled two breach of express warranty counts, both of which the Court dismissed.[7] The Court there dismissed the plaintiff's second breach of express warranty count, which was based on a product recall where the defendant purportedly promised to make certain repairs. In dismissing the plaintiff's second breach of express warranty count, the Court noted that "[t]hese statements of remedial intent and promise to repair in the context of a recall campaign were, by definition, *made outside the context of a sale* to plaintiffs" (emphasis added).

Here, Plaintiff has alleged that Defendant represented that the Products were, in fact, "All Natural," an objective, absolute state of being; either the Products are all natural, or they are not. *See, e.g.,* Compl. at ¶ 1. Furthermore, Plaintiff alleged that he purchased the Products because he read, perceived, and relied on Defendant's "All Natural" claim. *Id.* at 46. Thus, Plaintiff has stated a claim for breach of express warranty. *See Rudolph v. J.M. Smucker Co.*, 2014 U.S. Dist. LEXIS 33396 (March 13, 2014) (In a similar "All Natural" case, the plaintiff's "Complaint sufficiently

---

7. The plaintiff's first breach of express warranty claim was dismissed for lack of privity. Even if Plaintiff did not have privity in this matter, which she does, privity is not required in food cases. *See Carter v. Hector Supply Co.*, 128 So. 2d 390, 392 (Fla. 1961) (foodstuffs are a "well-recognized exception to the privity requirement").

allege[d] an affirmation of fact").[8]

### H. Plaintiff Has Properly Pled Defendant's Violation Under the MMWA

Finally, Defendant contends that Plaintiff's count for violation of the MMWA must be dismissed because Plaintiff has not stated an actionable warranty. MTD pp. 13—14. The MMWA creates a private right of action under federal law for state law warranty claims. *See* 15 U.S.C. § 2310 (d)(1); *See also Monticello v. Winnebago Indus. Inc.*, 369 F.Supp.2d 1350, 1356 (N.D. Ga. 2005). "[E]xcept in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir.1986). "The Act supplements, rather than supplants state law." *Monticello*, 369 F. Supp. 2d at 1356. Thus, by virtue of stating a cause of action for breach of express warranty under state law, discussed above, Plaintiff states a claim for violation of the MMWA.

### I. Any Dismissal of Plaintiff's Claims Should Be Without Prejudice

In the event the Court finds that any of Plaintiff's claims are insufficiently pled, dismissal should be without prejudice and with leave to amend. The standard for granting leave to amend is generous. Pursuant to FED. R. CIV. P. 15(a), leave to amend should "'be freely given when justice so requires;' this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (U.S. 1962) (citing 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1988).

In *Scott v. Eversole Mortuary,* 522 F.2d 1110, 1116 (9th Cir. 1975), the district court's

---

8. The plaintiff's breach of express warranty count was dismissed for failure to allege that the same provided notice to the defendant. *Id.* In contrast, Plaintiff here alleged that she provided Defendant notice. Compl. ¶ 108.

dismissal of plaintiff's complaint was reversed insofar as it denied leave to amend, because the court could "conceive of facts" that would render plaintiff's claim viable and could "discern from the record no reason why leave to amend should be denied." Similarly, in *Breier v. Northern California Bowling Proprietors' Ass'n,* 316 F.2d 787, 789–90 (9th Cir.1963) the court held that leave to amend should be granted "if underlying facts" provide proper grounds for relief or if the complaint can be saved by amendment. "[L]eave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'" *Id.* at 790 (quoting 3 Moore, Federal Practice, § 15.10 at 838 (2d ed. 1948)). *Id.* Generally, leave to amend is denied only when it is clear the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir.1992).

Based on the generous nature of granting leave to amend, it is appropriate in the current matter to allow amendment if any cause of action is dismissed. As discussed above, the standard is simply that the court must be able to "conceive of facts" that would make the claim a viable one. In the instant action, it is conceivable that if a dismissal is granted with respect to Plaintiff's claims, that amendment would be not only conceivable, but very probable.

### V.     Conclusion

Based on the foregoing, Plaintiff respectfully requests this Honorable Court enter an Order denying Defendant's Motion to Dismiss Plaintiff's Complaint, and for all other relief this Honorable Court deems just, appropriate, or proper.

Dated: August 25, 2014                                        Respectfully Submitted,

By:     */s/   Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
**THE EGGNATZ LAW FIRM, P.A.**
5400 S. University Drive, Ste. 413
Davie, FL 33328

        Tel:   (954) 889-3359
        Fax:  (954) 889-5913
        JEggnatz@EggnatzLaw.com

**THE LAW OFFICES OF**
**HOWARD W. RUBINSTEIN, P.A.**
Michael T. Fraser, FBN: 87411
1615 Forum Place, Suite 4C
West Palm Beach, FL 33401
Tel:   (800) 436-6437
Fax:  (415) 692-6607 (fax)
Email: *mfraser@hwrlawoffice.com*

*Trial Counsel for Plaintiff and the Proposed Class*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **25th day of August, 2014**, I electronically filed the forgoing document with the Clerk of the Court using CM/ECF. I also certify under penalty of perjury under the laws of the United States of America that the foregoing document is being served this day on all counsel of record via transmission Notices of Electronic Filing generated by CM/ECF. I further certify that this motion will be served upon all counsel of record upon entry of Notice of Appearance, and is being served upon Defendant with the Complaint.

        */s/   Joshua H. Eggnatz*

        Joshua H. Eggnatz, Esq.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A
SCOTT M. TEICH, ESQUIRE
FL Bar No.: 969140
Steich.pleadings@qpwblaw.com
*Attorneys for Defendant*
One East Broward Boulevard, Suite 1200
Fort Lauderdale, FL 33301
Tel: (954) 523-7008/Fax: (954) 523-7009